UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO.  10-cv-30036-MAP

| | |
|---|---|
| DALILA SANTIAGO | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LITTON LOAN SERVICING LP and DEUTSCHE BANK | ) |
| NATIONAL TRUST COMPANY, TRUSTEE FOR | ) |
| REGISTERED HOLDERS OF CBA COMMERICAL | ) |
| ASSETS SMALL BALANCE COMMERCIAL | ) |
| MORTGAGE PASS-THROUGH CERTIFICATE | ) |
| SERIES 2006-1 | ) |
| | ) |
|     Defendants | ) |
| | ) |

**DALILA SANTIAGO'S MEMORANDUM IN SUPPORT OF MOTION TO
REMAND CASE TO STATE COURT**

**I.  INTRODUCTION**

The defendants removed this case from Massachusetts Housing Court, Western

Division, on February 16, 2010.  However, the defendants did not have a sufficient basis

for  removal as the amount in controversy of Ms. Santiago's claims was less than

$75,000, the required diversity jurisdictional threshold. As a result, this Court does not

have subject matter jurisdiction over the case.

Pursuant to 28 U.S.C. § 1447, plaintiff Dalila Santiago requests that this Court

remand the case back to the Housing Court because the Court lacks subject matter

jurisdiction.

## II.  STATEMENT OF FACTS

Dalila Santiago received a letter from counsel for Litton Loan Servicing LP ("Litton") on or about November 10, 2008 notifying her that she should pay rent to Litton rather than to her landlord, Ernestine Simmons.  Affidavit of Joel Feldman in Support of Motion to Remand Case, ¶ 2 ("Feldman Aff.") .  Subsequently, Ms. Santiago, through her counsel, complained to counsel for Litton that she had numerous substandard conditions in her apartment and notified Litton that she intended to go to court to obtain repairs in her apartment from Litton.  *Id*. at ¶ 3.

After repeated notifications of substandard conditions, Litton's counsel told Ms. Santiago's counsel on April 9, 2009,  that she should pay her rent "for each month since Litton *has taken possession*" of her apartment (emphasis added).  *Id*. at ¶ 4.  Ms. Santiago claimed during the time period between November and April that repairs had taken far too long and had not been completed.  *Id*. at ¶ 3.

Because the parties could not reach a resolution of Ms. Santiago's complaints, on May 4, 2009, Ms. Santiago's counsel wrote a letter on behalf of Dalila Santiago to each defendant requesting relief under Massachusetts General Laws c. 93A. *Id*. at ¶ 5.   In the c. 93A letter, Ms. Santiago sought damages of $4320 as an abatement of rent, and $15,000 for emotional distress.  *Id*. at ¶ 6.

According to counsel for the defendants, though, by June 3, 2009, Litton  had "fully complied with its obligations to remedy…substandard conditions."  *Id*. at ¶ 7.  As counsel noted in his June 3 response to the c. 93A offer letter, "upon exercising its rights under an assignment of rents near the end of 2008, Litton replaced the front door, fixed

the locks and interior door, and hired a contractor to remove the trash…" Counsel went on to note in the same communication that Litton had not engaged in any conduct constituting a breach of c. 93A, and that Ms. Santiago had failed to reasonably describe any injury she had suffered at all. *Id*. at ¶ 8.

Subsequently, on or about July 7, 2009, counsel for Litton communicated to Ms. Santiago's counsel that his clients wanted to a new offer from Ms. Santiago to attempt to settle her claims.  *Id*. at ¶ 9.   Solely because the defendants made such a request, Ms. Santiago's counsel wrote a letter on July 8, 2009, making such a new offer to settle the claims.[1] *Id*. at ¶ 10.  The offer was intended to begin a new round of negotiations, and was the absolute maximum that could possibly be recovered, going beyond double damages to treble damages;  it was never intended to establish any "litigation value" of Ms. Santiago's claims. *Id*. at ¶¶ 10-11.  When the offer was conveyed, Ms. Santiago's counsel communicated explicitly that the offer was an initial dollar figure meant to initiate a process to reach a negotiated settlement. *Id.*

Thereafter, counsel for the defendants and for the plaintiff discussed a possible settlement of the claims on a number of occasions.  *Id*. at ¶¶ 10-14.  On August 7, 2009, counsel for the plaintiff and counsel for the defendants discussed the value of the claims of Ms. Santiago, and reached a very preliminary understanding that the case could likely settle for a value of $30,000. *Id*. at ¶ 13 .   During this discussion, counsel for the plaintiff noted that he believed the value of Ms. Santiago's claims was $30,000, and that he

---

[1] Ms. Santiago vigorously objects to the use of any settlement figures exchanged by the parties in these proceedings, as Federal Rule of Evidence 408 precludes the use of  statements made in settlement negotiations to the amount of a claim.   However, since the defendants have chosen to use such statements, should this Court wish to consider the statements, the plaintiff wishes to insure that all of the relevant

believed Ms. Santiago would settle for this valuation of her claims. *Id.* Despite his

favorable inclination to this settlement amount, counsel for the defendants never

communicated back to the plaintiff's counsel his client's approval or disapproval of the

amount; rather he communicated that he had not received any decision on the outstanding

offer of $30,000. *Id*. at ¶ 14.

Ms. Santiago commenced her complaint for substandard conditions on December

23, 2010 in the Housing Court-Western Division.  The defendants removed the case to

federal court on February 16, 2010.   In its removal petition, the defendants almost

exclusively relied upon the contents of one confidential settlement letter sent to the

defendants at the behest of the defendants.  The defendants did not cite any of the other

estimates of the litigation value of this case which the parties exchanged over many

months.

## III.  ARGUMENT

A.   THE AMOUNT IN CONTROVERSY OF MS. SANTIAGO'S DAMAGE
CLAIMS DOES NOT EXCEED $75,000.00

Federal courts have jurisdiction over suits between citizens of different states only

if the amount in controversy exceeds the statutory minimum of $75,000.00.  28 U.S.C. §

1331(a).  The amount in controversy in this case does not rise to $75,000.

In general, when a plaintiff's state court complaint alleges that her claims are

worth more than $75,000, that claim is determinative of the amount in controversy.  14C

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3725.1 (4th

---

statements are considered.  The plaintiff does not waive any argument that such amounts are not admissible
and should not be considered by this Court.

ed. 2009).    But as the same treatise notes, "special difficulties arise when the amount in controversy is not apparent from the face of the plaintiff's state court complaint."  *Id.*  In those instances, some courts within the jurisdiction of the First Circuit Court of Appeals have engaged in an independent appraisal of the plaintiff's claims to make the determination.  *See, e.g., Vradenburgh v. Wal-Mart Stores, Inc.*, 397 F. Supp. 2d 76 (D. Me. 2005)(court after independent examination of amount in controversy concludes that amount is less than $75,000 in personal injury claim).

Courts have traditionally placed the burden on the removing defendant to prove that the amount involved in the litigation is over the statutorily required limit, and have determined that the removal statute should be narrowly construed and all uncertainties should be resolved in favor of remand.  *See, e.g.,  Lupo v. Human Affairs Intern, Inc.*, 28 F. 3d 269, 274 (2d Cir. 1994).  The exact standard to be met by the defendants has been a point of dispute in the federal courts.  The 9th Circuit Court of Appeals has required removing defendants to prove to a legal certainty that the amount in controversy has been established.  *See, e.g., Sanchez v. Monumental Life Ins. Co.*, 102 F. 3d 398, 400-401 (9th Cir. 1996).  Some district courts in the jurisdiction of the First Circuit have determined that the defendant must prove "by a preponderance of the evidence" that the amount in controversy is over $75,000.  *Vradenburgh v. Wal-Mart Stores, Inc.*, 397 F. Supp. 2d 76 (D. Me. 2005);  *See also, e.g., Doughty v. Hyster New England, Inc.*, 344 F. Supp.  2d 217 (D. Me. 2004).   Using either standard, the defendants cannot prove that the jurisdictional amount has been met.

Ms. Santiago did not provide an amount in controversy in her complaint.  As a result, the defendant has resorted to providing this Court with communications which

were part of the settlement discussions between the parties.  Ms. Santiago requests that

this Court exclude any consideration of such discussions under Federal Rule of Evidence

408.  *See, King v. Wal-Mart Stores, Inc.*, 940 F.Supp. 213, 217 n. 1 (S.D.Ind.1996). [2]  But

to the extent the Court considers such discussions, Ms. Santiago wishes to provide the

complete record of such discussions, all of which occurred well before the filing of the

complaint. [3]

Ms. Santiago initially provided to the defendants a settlement offer contained in a

letter sent pursuant to G.L. c. 93A which was less than $20,000.  Subsequently, the

defendants, through their counsel, noted that they disputed that the claims *were even*

*worth $20,000* and, instead, offered Ms. Santiago a waiver of all rent to the date of the

response which they claimed was worth $5760 and a payment of $4000, for a total of

approximately $9760, plus the requirement that Ms. Santiago move out.  Exhibit 4 to

Feldman Aff.

Thereafter, the defendants counsel requested a new offer to settle the matter, and

Ms. Santiago obliged, claiming again that an abatement of rent and her emotional distress

damages amounted to less than $20,000.  As part of this renewed settlement negotiations,

Ms. Santiago also initially made a claim based upon c. 93A at the extreme upper limit of

any possible recovery—she sought treble damages in the amount of $57,000.  Feldman

Aff. at ¶ 9.  Treble damages under c. 93A, however, are only awarded where a landlord

---

[2] A number of other courts have allowed such communication, however, claiming that the communications made as  part of settlement discussions are permitted under Rule 408 as to the "amount in controversy" portion of  diversity jurisdiction.

[3] The debate here over the contents of settlement discussions provides a rich example of why settlement offers conveyed during negotiations should not be permitted to establish an amount in controversy by the district courts.  Such tactics inevitably will lead to counsel filing affidavits about conversations between counsel, a development which should be discouraged as it inexorably may lead to the witness testimony of counsel being required by the parties.

acts egregiously in the extreme, as the option of double damages exists where a court finds that a landlord has engaged in egregious acts.  *See, e.g., Brown v. LeClair*, 20 Mass App. Ct. 976, 980, 482 N.E. 2d 870, 874 (1985).  The defendants have denied that they engaged in any such egregious conduct throughout the course of Ms. Santiago's occupancy, as demonstrated by their response to the c. 93A letter.  Ms. Santiago's new offer should be seen in the light of this set of negotiations, where the parties expected they would be bargaining to an amount which would be necessarily less than Ms. Santiago's initial offer. Feldman Aff. at ¶¶ 9-14.

To bolster this expectation, the defendants' counsel and plaintiff's counsel spoke on August 7, 2009 and discussed whether there was a value to the case which could be agreed to by the parties.  The number both parties agreed to convey to their clients was $30,000 and the plaintiff's counsel ultimately agreed that his client would be willing to settle for that figure, which reflected her valuation of her claims.  Defendant's counsel notified plaintiff's counsel that he would respond to this joint attempt to settle the case, but failed to do so after many weeks of communication.

Courts in this circuit and others have repeated that "a settlement demand is not the sole determinative factor" when determining an amount in controversy.  *See, e.g., Doughty v. Hyster New England, Inc.* 344 F. Supp. 2d 217, 219 (D. Me. 2004); *Vermande v. Hyundai Motor America, Inc.,* 352 F. Supp. 2d 195, 202-203 (D. Conn. 2004) ("Courts should be alert to the fact that settlement offers can often be wildly unrealistic and constitute mere puffery or posturing rather than a fair or realistic appraisal of a party's damages.")  Courts should consider the context in which the offer is made and should

determine the litigation value of the case, not simply the settlement demand of a plaintiff.
*Id.*

In this case, Ms. Santiago initially claimed maximum damages of *under $20,000*. After an invitation by the defendants to continue to bargain and to start anew the negotiation process, Ms. Santiago conveyed a new offer seeking the maximum possible under her claims (including a trebling of her damages), over $56,000. But this message was provided to defendant's counsel with the caveat that the offer was meant to "jump start" a new round of negotiations, and should not be taken as a "take it or leave it" offer. Feldman Aff. ¶¶ 10-14.

After some further communications, counsel for both parties then *together* preliminarily agreed to $30,000 as a realistic litigation value, a number which was approved by Ms. Santiago, but simply not responded to by the defendants. The context of ongoing negotiations shows that this $30,000 figure was a much more realistic litigation value to both parties in August, 2008 (well before the filing of this case) than the initial bargaining position taken by Ms. Santiago. Given this evidence, this Court should not use a figure constituting maximum punitive damages as the "litigation value" of this case. Ms. Santiago requests that instead the Court use the figure of $30,000 preliminarily agreed to by the parties, which even then requires a court to find that *punitive damages apply*, one which courts have been traditionally reluctant to apply.

B.    MS. SANTIAGO'S ANTICIPATED ATTORNEY'S FEES ARE EXPECTED
       TO BE BELOW THE $18,000 SPECULATED UPON BY THE DEFENDANTS

The defendants notice of removal states that "it is reasonable to assume that

Santiago will incur more than $12,750 [in attorney's fees] if she were to litigate this

matter through trial."

There is no settled law in the First Circuit concerning whether future attorney's

fees are to be included in the calculation concerning amount in controversy.  By contrast,

the Seventh Circuit Court of Appeals has determined that only attorney's fees expended

at the time of removal are to be considered.  *See, Gardynski-Leschuck v. Ford Motor Co.*,

142 F.3d 955 (7th Cir.1998).  In that case, the Court found that relying on an expected

future attorney's fee for federal jurisdiction would allow a case worth $10 to be removed

to federal court if the plaintiff could show that $50,000 (the jurisdictional amount in

1998) would likely be expended on fees.  Ms. Santiago's initial offer to settle this claim

was under $20,000, well below the $75,000 jurisdictional amount.  Only by adding in

almost $20,000 in attorney's fees can the defendants find the sums necessary to reach that

limit.  However, the defendants admit that, at maximum, $6000 has been expended on

this case to date.  Adding $6000 to the alleged $56,000 amount is well below the

jurisdictional amount and the case should be remanded, following the *Gardynski*

precedent.

Should this court count the "expected" future fees involved in litigating this case

to trial, attorney's fees still would not rise to the mandated level.  Given the relatively

routine nature of this case, Ms. Santiago expects to incur total attorney's fees of less than

$12,000 (at a rate of $275 per hour), and as a result, the amount in controversy, even including the $56,250 claimed by the defendants as the litigation value of this case, is less than $75,000.  Feldman Aff.

Ms. Santiago's counsel has already sent a c. 93A letter, engaged in many settlement conversations with the defendants, communicated on multiple occasions with defendants' counsel, Ms. Santiago and the defendants' realtor about substandard conditions, filed a complaint and drafted and served all of her written discovery. Feldman Aff. at ¶15.   The total amount of attorney's fees expended to the date of filing was revealed in a confidential settlement communication to be $6000 to this point.[4]

The case, though is a remarkably standard substandard conditions case.  Ms. Santiago lived for a number of months with substandard conditions in her residential apartment and claims that the defendants knew about conditions but did not fix them. The property was sold in July, 2008, and as a result Ms. Santiago has claims for substandard conditions under state law for about ten months, and seeks an abatement of rent and emotional distress damages, among others.  That is the case in a nutshell.  *See*, Complaint of Dalila Santiago (on file with this Court).

Assuming that the case remains such a routine case, counsel for Ms. Santiago expects to spend no more than an additional twenty hours litigating it. Feldman Aff. at ¶¶ 17-19. This would constitute another three hours answering written discovery, seven hours preparing for and taking up to three short depositions, leaving up to another ten hours preparing for and trying what should be a half day trial.

---

[4] Ms. Santiago requests that the amount of attorney's fees disclosed in the settlement communication to defendants be stricken for the reasons articulated above, that Federal Rule of Evidence 408 should prohibit such disclosure.

Regardless of how complicated procedurally the defendants try to make this case, the case is a routine "conditions" case which plaintiff's counsel has tried tens of times in the Housing Courts of the Commonwealth.  The trial will require Ms. Santiago to testify, along possibly with another person familiar with the apartment, and perhaps the realtor who also saw conditions.   Ms. Santiago's counsel has litigated over one hundred similar cases.  Based upon this wealth of experience, he has provided this court with an affidavit that it is likely that an additional twenty hours will need to be spent to complete the trial in this case.  Feldman Aff. at ¶¶ 17-24.

Should the case become more complex, even if Ms. Santiago's counsel was required to spend ten more hours on additional motions, he could still not reasonably be expected to spend an additional $12,500 to try this standard landlord/tenant matter. Feldman Aff. at ¶¶ 17-24.  In other words, Ms. Santiago's counsel would need to spend an additional *forty-five hours* beyond that already spent on filing this complaint and serving written discovery in preparation to try this half-day case to this Court.   Counsel has stated his opinion that this is extremely unlikely. *Id.*  Given this scenario, and given that the only assertions (unsupported by affidavit) made by the defendants are that approximately $19,000 must be expended to litigate this case to get to $75,000, this Court should independently examine the details of the case and determine that anticipated attorney's fees will not yield the amount in controversy.

## III.  CONCLUSION

For the above reasons, the defendants respectfully requests that this Court allow

their motion to remand this matter to the state Housing Court, and to award the plaintiff

her costs, including attorney's fees.

DALILA SANTIAGO
By their attorney,

I hereby certify that a                           /s/ Joel Feldman
true copy of the above                          Joel Feldman
document was served upon                   BBO # 552963
counsel of record                                 Heisler, Feldman
by mail on                                           McCormick & Garrow, P.C.
                                                         1145 Main Street, Suite 508
_____.                  Springfield MA  01103
                                                         (413)788-7988
_____                   (413)788-7996 (fax)
Dated:_____


CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic File
(NEF).

/s/Joel Feldman
Joel Feldman